Pennsylvania Power Company v. Conn
Welding & Machine Co. (No. 1)

*Chambers, O'Neill, Nicolls & Balph,* for plaintiff.

*Mansell & McKee* and *Henry E. Rea, Jr.,* for defendant.

HENDERSON, J., August 5, 1963.—This case is one for contribution or indemnification growing out of plaintiff's previous settlement of two different cases. . . .

Two employes of defendant, Paden and Dawson, were injured while on a demolition job for defendant by high voltage electricity being carried through a power line of plaintiff company. As a result of the accident Dawson was seriously injured and Paden was killed. Defendant's workmen's compensation carrier has made compensation payments to Dawson based on total disability and to the administrator of the estate of Paden based on Paden's death.

Dawson instituted a trespass action against plaintiff in the Court of Common Pleas of Allegheny County, January term, 1957, no. 1742, and a verdict, which has since become final, was awarded Dawson in the amount of $75,000. The Paden estate instituted suit against plaintiff in the United States District Court for the Western District of Pennsylvania at no. 15207, in which suit plaintiff herein joined defendant herein as third party defendant. Prior to verdict in this suit, settlement was reached between the parties in the amount of $77,500.

Whereupon, plaintiff brought this action seeking contribution from or indemnification by defendant on the theory that defendant is the sole tortfeasor or a joint tortfeasor with plaintiff with respect to this injury and death. . . .

The question of the determination of plaintiff Pennsylvania Power Company's rights for contribution or

indemnification in this matter was determined by this court's prior opinion in ruling on defendant's motion for judgment on the pleadings. That opinion was based on the allegations in the pleadings that plaintiff and defendant were joint tortfeasors with respect to the injuries suffered by Dawson and with regard to the death of Paden.

Since that time the question of defendant's negligence was submitted to a jury which, by special verdict found that defendant was negligent and that this negligence was the proximate cause of the injuries and death. Therefore, as a result of the pleadings and the verdicts in the different trials which grew out of these accidents, we now have a determination that the parties to this action are joint tortfeasors, and the decision herein is based upon that finding.

At argument and by brief, plaintiff has renewed its allegations to the effect that it is entitled to indemnification in this case. We have previously ruled that:

"The right of indemnity rests on primary and secondary liability as between two responsible persons and the right enures to one who, without active fault, has been compelled to pay damages occasioned by the initial negligence of another, and for which he is secondarily liable": Builders Supply Company v. McCabe, 366 Pa. 323 (1951).

Whereas, in the case at bar we have active negligence on the part of two joint tortfeasors and the liability of neither is secondary to the liability of the other, then the principles of indemnification do not apply.

Plaintiff by brief and argument still contests a finding that the parties herein are joint tortfeasors and claims that the verdict in the Allegheny County court case finding it to have been negligent should not be binding upon it in this case for contribution and indemnity even though this case grows out of the same fact situation. However, it agrees that Builders Supply

Company case, supra, holds that it is bound to a joint tortfeasor finding by that verdict.

In spite of this plaintiff cites Philadelphia Company v. Central Traction Company and Charles A. Balph, 165 Pa. 456 (1895), and other related cases for the proposition that the parties hereto are not joint tortfeasors but that its negligence is secondary to that of defendant.

We find that the holding of the Philadelphia Company case is not controlling herein in that the fact situation presents a different problem. If in the case at bar defendant had done some work with regard to positioning of plaintiff's power lines or with regard to repairs of those lines or work about those lines and had left plaintiff's power lines in a condition where they might injure other members of the public, then that case might be controlling. Similar distinctions are found between the other cases cited and the case at bar. We, therefore, hold that the case at bar is one concerning joint tortfeasors' rights rather than one determining rights as between parties who are primarily and secondarily liable.

Plaintiff makes one further point with regard to the question of indemnification to the effect that, as a practical matter, plaintiff was deprived of certain rights in the Dawson case because the jurisdiction of the Allegheny County courts was not such as to permit the plaintiff to join defendant as additional defendant in that case. Because of geographical and jurisdictional limits, it was unable to submit the liability of these two parties to that one jury. Under the Pennsylvania Rules of Civil Procedure, it is recognized that such situations as this can develop but the rules must be followed. In any event, this objection was overcome by the verdict of the jury in the case at bar.

Therefore, as we held in our previous opinion, it having been found that the parties are joint tortfeasors

with regard to this accident, no right of indemnification exists in favor of one and against the other.

With regard to damages in the nature of contribution, the general law is that:

"The right of contribution is one by which a person who is jointly liable with others, but who has paid more than his proper share in the discharge of the joint liability, may compel the others to reimburse him proportionately." 8 P.L. Encyc. Contribution §1.

As plaintiff states in his brief, we held the following in our previous opinion:

"Thus, whereas contribution normally requires a proportional division of the total liability among those liable, in cases where contribution is sought from a workmen's compensation employer, the limit of such employer's liability may not exceed such employer's liability under the Workmen's Compensation Act to the employee."

With reference then to plaintiff's claim for contribution growing out of the Dawson count, we find that plaintiff made payment after the verdict became final in the amount of $75,000 plus interest and costs. Under the general law of contribution, since the parties hereto are joint tortfeasors, plaintiff would be entitled to contribution from defendant in one-half of that amount. However, since defendant's liability for contribution is limited to the amount of the workmen's compensation payments which it would have been required to pay to Dawson, then that figure is the maximum contribution to which plaintiff herein may be entitled in the Dawson count.

What then is the amount of workmen's compensation benefits to which Dawson would have been entitled?

Under the workmen's compensation law in effect at the time of the accident, which became effective March 30, 1956, the liability of Dawson's employer had been

changed from a maximum of $20,000 to unlimited liability. If Dawson should remain disabled for the balance of his lifetime, he would be entitled to Workmen's Compensation payments over that period. However, we find in this case that prior to trial, the employer had filed a petition to modify, and all workmen's compensation payments to Dawson had ceased. Therefore, as of the time of trial and as of the present date, total payments have been made to Dawson or on his behalf as follows: total medical payment, $5,491; total compensation payments, $6,937.50; making total payments in the amount of $12,428.50. As has been stated in the findings of fact, at the time the Dawson case was settled, defendant's workmen's compensation carrier was subrogated to Dawson's recovery from plaintiff in the amount of $12,428.50 and such subrogation amount was paid to defendant's carrier by plaintiff as a part of that settlement procedure.

Under the present situation, with no further payments being made at this time to Dawson, we find that the present limit of defendant's workmen's compensation liability to Dawson is in that amount and we shall order contribution from defendant to plaintiff at this time in accordance therewith.

A future problem may arise in this regard, however, should Dawson again become entitled to further compensation payments as a result of this accident. In that event, plaintiff's contribution rights against defendant would change accordingly. Plaintiff takes the position that it is entitled to payment of its contribution rights in a lump sum payment rather than periodic payments as its rights accrue. However, since Dawson's ultimate compensation benefits cannot be determined until the time of his death, any order which would be made at this time concerning the total contribution to which plaintiff will be entitled could not be based on fact but rather on speculation. No such order will be made.

Had Dawson's compensation payments not been suspended at any time until now and if it appeared that his payments would continue throughout the balance of his lifetime, then by analogy to total disability recovery cases, we could make an order of contribution based on Dawson's life expectancy and direct a lump sum payment of that amount at this time. However, from the evidence it is doubtful whether any further liability for workmen's compensation benefits to Dawson will accrue, at least until the time when he becomes quite aged. We, therefore, hold that defendant's liability for payments to Dawson, i.e., liability for contribution payments to plaintiff, must be reassessed or redetermined from time to time over the balance of Dawson's lifetime as his circumstances and conditions may change.

In those contract cases calling for periodic payments, it has been held that as each periodic payment falls due and is unpaid, the payee acquires a separate and distinct cause of action for which suit can be brought.

"Contracts to pay money or to deliver goods in installments require a series of separate performances of measurable amounts at intervals of time. . . . There are contracts, however, that have been said to require continuing (or continuous) performance for some specified period of time, a period that may be definite or indefinite when the contract is made. . . . For each 'partial' breach a separate action is maintainable, just as in the case of an 'installment' contract. . . . A contract to furnish support for life is a 'continuing' contract; *and so is a contract to pay a weekly sum of money as long as total disability shall last.*" Corbin on Contracts, Volume 4, §956. (Italics supplied)

By analogy to those cases, we hold that plaintiff herein will be entitled to additional contribution payments from defendant herein in the future, should

Dawson's condition and circumstances during his lifetime change so as to entitle him to further workmen's compensation benefits. The court understands that such a holding will place a burden on the parties hereto which will require each of them to advise themselves throughout the balance of Dawson's lifetime as to his circumstances, conditions, and right to compensation benefits, but we find that this obligation cannot be ignored and is one which must automatically follow from the present state of the law.

Defendant takes the position with reference to the Dawson count that since plaintiff's settlement may not have extinguished defendant's liability to Dawson, plaintiff is not entitled to contribution. The section of the act relied upon by defendant reads as follows:

"A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement": Uniform Contribution Among Tortfeasors Act of July 19, 1951, P. L. 1130, 12 PS §2083, sec. 2, subsec. 3.

Defendant's position is based on the claim that the ultimate amount of workmen's compensation benefits to which Dawson might become entitled cannot be found to have been extinguished because no determination of the ultimate benefits to Dawson under the workmen's compensation law can be made until Dawson's death. Defendant previously raised this point and it was ruled upon in the court's previous opinion. Since that opinion was written, the Superior Court of Pennsylvania had occasion to rule upon this argument in the case of Mong v. Hershberger, 200 Pa. Superior Ct. 68, (1962). Judge Montgomery's opinion in that case was filed on December 12, 1962, and held that:

"And although the third provision of Section 2, when given a strict interpretation might lead to the conclusion that in cases of settlement, unless there is a

complete extinguishment of the claims against the other tort-feasor, the right of contribution does not exist. We do not believe the Legislature intended such a strict meaning. The verb extinguish does not necessarily mean an abrupt or complete elimination of fire, or in law, of rights or claims. It may also mean a gradual or limited result."

Plaintiff also asks contribution from defendant growing out of the settlement of the Paden case. This was the Federal court case in Pittsburgh in which defendant herein had been brought into the case as third party defendant. We have found as a fact that defendant was subrogated to Paden's recovery in the amount of $17,384.54 growing out of the workmen's compensation agreement. Paden's settlement demand in that case was $75,000 plus any subrogation claim which it would be required to pay to defendant's workmen's compensation carrier growing out of the workmen's compensation benefits previously received. In order to settle that case, plaintiff agreed to pay Paden the sum of $75,000 and to pay to defendant's workmen's compensation carrier on its claim against Paden the sum of $2,500, this payment to be in complete extinguishment of defendant's subrogation claim against Paden. Settlement of the Paden case was effected on that basis.

Had Paden not been an employe of defendant, the workmen's compensation subrogation claim would not have entered into the settlement of the Paden case and plaintiff might be entitled to contribution from defendant in the amount of 50 percent of plaintiff's settlement payment. However, as we have already stated, since Paden was an employe of defendant, then defendant's liability for contribution to plaintiff cannot be in excess of defendant's workmen's compensation liability to Paden, which is $17,384.54.

Defendant, however, takes the position that even though it would ordinarily be required to contribute

$17,384.54 to plaintiff, no such contribution should be required in this case since plaintiff and defendant entered into a bona fide settlement agreement with Paden, under which settlement agreement each party hereto contributed something of value to the settlement, even though in unequal amounts. We have found as a fact that in order to effectuate that settlement, plaintiff paid to defendant the sum of $2,500 which defendant accepted as full payment of its subrogation claim which at the time was $17,384.50. Therefore, in the settlement defendant gave up and waived its claim against plaintiff in the amount of $14,884.50.

In answer to this plaintiff takes the position that it did not enter into a common settlement with defendant of the Paden claim, that it negotiated separately with Paden in that settlement procedure, that it reserved its rights against defendant herein in the release which grew out of the settlement, and that the order of court approving the settlement reserved to plaintiff its rights of contribution against defendant. In other words, plaintiff herein takes the position that it previously settled the case in which defendant was a party, that in order to effectuate that settlement it gave its check to defendant in the amount of $2,500, that this resulted in the extinguishment of a claim against it [plaintiff] in the amount of $14,884.50, and that now defendant should be required to not only reimburse it for the $2,500.00 previously given to defendant but also in the amount of $14,884.50 which plaintiff would have owed to defendant. We do not find plaintiff's argument to be persuasive in this regard.

It is true that at the time of settlement the court permitted plaintiff to discontinue its third party action against defendant herein without prejudice to any rights which it might have had against this defendant. This, however, does not create new rights which it did not have. The laws of the Commonwealth of Pennsyl-

vania look with favor upon the settlement of actions and in all cases where there is more than one defendant in the case and where each defendant contributes something of value to the settlement of the case, their rights over and against each other are concluded. And the fact that one party to such settlement attempts to reserve rights against the other will not help that party.

"Thus, when an injured person brings a personal injury action against two defendants and settles in full with one, thereby extinguishing all the liability against both, the other one *who is not a party to the settlement* is still a joint tort-feasor under the Uniform Act, and the one who was a party to the settlement has a right of action for contribution against the other . . . ." 8 P. L. Encyc. Contribution §4, p. 405. (Italics supplied.)

If the law were otherwise, in every case where more than one defendant contributes an unequal proportion to the settlement of a case, then that defendant which contributed more than the others, merely by reserving its rights against the others, could later demand a proportionate settlement from each of the remaining defendants, as long as settlement had been effected without any common negotiating meeting in which the different defendants were involved. If this situation existed in the law, then there would be no settlement of any case in which there might be more than one defendant unless each defendant contributed an equal portion to the settlement. As a practical matter, we know that there are many cases which are settled without defendants contributing equally to the settlement and which would not be settled under circumstances such as those which plaintiff presses for here.

We shall, therefore, hold that even though in the Paden count plaintiff herein ordinarily would be entitled to contribution from defendant herein in the

maximum amount of defendant's workmen's compensation obligation to Paden, in this case where defendant contributed something of value to the original settlement of the Paden claim, which enured to the benefit of plaintiff herein, and where plaintiff herein made a payment to defendant herein as a part of the settlement, that settlement concludes any further rights between the parties.

Defendant claims further credit to itself or its insurance carrier for any expenses which it may have incurred by way of counsel fees in the original Dawson case. The Workmen's Compensation Act of February 28, 1956, P. L. 1120, sec. 1, 77 PS §671, as amended, reads as follows:

"Reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employee, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement."

This claim for credit is governed by Dowhy v. Harvey B. Moyer, Inc., 278 F. 2d 753, CA 1960, which case held that where plaintiff recovered a verdict of $25,000 for injuries against original defendant nonemployer, who on third party action recovered a verdict against plaintiff's employer from whom plaintiff had already received compensation payments but the entire liability for compensation had not as yet been determined, and judgment had been entered against nonemployer but not against plaintiff's employer, nonemployer was not entitled to pay into court the difference between the verdict and the amount of compensation paid by the employer together with costs and interest and have the judgment marked satisfied, in view of the compensa-

tion act amendment that an employe is entitled to a pro rata counsel fee measured by the amount of the employer's liability to him for compensation, whether the compensation has been paid or not, and that the statute makes no exception where the employer has been found liable for contribution as a joint tortfeasor.

In this per curiam opinion the court held:

"But the statute expressly provides that the employer is not only liable for compensation payments but also for a proportionate share of counsel fees. Even assuming that the original defendant (the nonemployer) can utilize the employer's right of subrogation in satisfaction of its claim for contribution against the employer as a joint tortfeasor, as we have noted above, the statutory amount that the employer can recover under this right is the amount of payments of compensation less a pro rata share of counsel fees."

The court further held:

"The statute makes no exception for the case where the employer has been found liable for contribution as a joint tortfeasor."

Applying this law to the case at bar we find that:

"In effect, this is an attempt on the part of the original defendant to utilize the right of subrogation which is granted by statute to the employer": Dowhy v. Moyer, supra.

In the original Dawson settlement plaintiff deducted the workmen's compensation subrogation claim of $12,428.50 from the $75,000 settlement figure and paid over that amount to defendant. Defendant then, in accordance with section 671, paid to Dawson's counsel as its portion of the counsel fees $4,142.83 plus $675 making a total of $4,817.83. If we should permit contribution in the amount of $12,428.50, we would then be permitting the original defendant to utilize the right of subrogation granted by statute to the employer and depriving the employer of that right to the extent of

the $4,817.83. Therefore, plaintiff's right of contribution from defendant in the Dawson count is found to be $12,428.50 less $4,817.83 or a total figure of $7,610.67.

### Conclusions of Law

1. Pennsylvania Power Company, plaintiff herein, and Conn Welding & Machine Co., defendant herein, are joint tortfeasors with respect to the injuries suffered by Dawson and with regard to the death of Paden.

2. In those cases where there is active negligence on the part of two joint tortfeasors and the liability of neither is secondary to the liability of the other, then no right of indemnification exists between them.

3. The right of contribution is one by which a person who is jointly liable with others and who has paid more than his proper share in the discharge of the joint liability may compel the others to reimburse him proportionately.

4. Although contribution normally requires a proportional division of the total liability among those liable, in cases where contribution is sought from a workmen's compensation employer, the limit of such employer's liability may not exceed the amount of the employer's liability to the employe under the workmen's compensation laws.

5. In those situations where the obligation of a joint tortfeasor employer for workmen's compensation payments to an employe cannot be determined until such time as the employe's death because even though the right to compensation payments has ceased some time previously, they may in the future be reopened, the contribution rights the fellow joint tortfeasor shall be limited to the total amount of compensation benefits paid or payable to the employe from the time of the injury until the payments ceased. If in the future the employe should become entitled to additional workmen's compensation payments, then the non-

employer joint tortfeasor will again become entitled to contribution in the amount of those payments, as those rights would accrue, from the employer's joint tortfeasor.

6. Under subsection 3 of section 2 of the Uniform Contribution Among Tortfeasors Act the right of contribution between joint tortfeasors may exist even though the settlement payment by the one did not result in a complete and absolute extinguishment of all future claims which might arise against the other tortfeasor.

7. In those cases where two defendants being joint tortfeasors each contribute something of value to the plaintiff in order to settle the case and particularly in those cases where one defendant makes payment to the other defendant of a substantial amount of money in order to extinguish the other defendant's claim against it as a part of the settlement, then, and in that event, the rights of the paying defendant with regard to a later action of contribution are concluded and extinguished against the other defendant, even though in the settlement procedure the paying defendant reserves its rights against the other defendant.

8. Plaintiff is entitled to contribution from defendant in the Dawson count in the amount of $12,428.50, less credit for attorney's fees paid by defendant in the amount of $4,817.83, or a total contribution figure in the amount of $7,610.67 plus interest to the present time.

9. Plaintiff is entitled to no contribution from defendant in the Paden count.

### Order of Court

Now, August 5, 1963, it is hereby ordered, adjudged and decreed as follows:

1. Pennsylvania Power Company, plaintiff, is entitled to contribution from Conn Welding & Machine Co., defendant, in the amount of $7,610.67, plus interest.

2. Should the circumstances and conditions of Russell S. Dawson become such as would entitle him to workmen's compensation payments at any future time during his lifetime, then and in that event Conn Welding & Machine Co., through Pennsylvania Manufacturers' Casualty Insurance Company, its workmen's compensation carrier at the time of the injuries of Dawson, shall become obligated to make contribution in the amount of such workmen's compensation benefits to Pennsylvania Power Company. However, the uppermost limit of the liability of Conn Welding & Machine Co. for such contribution shall be the sum of $37,500.

3. Pennsylvania Power Company, plaintiff, is entitled to no contribution from Conn Welding & Machine Co., defendant, growing out of the settlement of the Kenneth C. Paden case.